IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| RONALD B. GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 318-045 |
| | ) | |
| ANDRIA MAYBERRY, and THE TMG FIRM, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT ANDRIA MAYBERRY'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant Andria Mayberry and files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 as to Plaintiff Ronald B. Gray's claims against her.

**BACKGROUND**

Plaintiff is an inmate at the Wheeler Correctional Facility in Georgia, where he is incarcerated after being "convicted of one count of family violence aggravated assault, two counts of misdemeanor family violence battery (one count as a lesser-included crime to family violence aggravated assault), one count of false imprisonment, and two counts of cruelty to children in the third degree." *Gray v. State*, 347 Ga. App. 235, 235 (2018); (*see also* Defendant Mayberry's Statement of Material Facts ("SMF") at ¶¶ 18-19). The conviction stems from his brutal attack on his wife in 2009, who was seven-months pregnant at the time. *Gray*, 347 Ga. at 235; (*see also* SMF at ¶ 20). Shortly after the beating, his wife "was taken to the hospital, where she learned that her baby had died and was induced to deliver her stillborn daughter." *Gray*, 347

1

Ga. at 236; (*see also* SMF at ¶ 20). Plaintiff "confessed that he had committed several of the acts for which he was later indicted, including punching his wife in the face and beating her with a belt." *Gray*, 347 Ga. at 236; (*see also* SMF at ¶ 20).

In 1993, sixteen years before the above attack, Plaintiff also physically attacked Ms. Mayberry. (SMF at ¶ 13.) He first beat Ms. Mayberry while she was 37 weeks pregnant, inducing early labor. (*Id.* at ¶¶ 13, 15.) Plaintiff again beat Ms. Mayberry shortly thereafter, while their premature son was still in the hospital. (*Id.* at ¶ 16.) Ms. Mayberry bears the wounds from those beatings to this day, including a false front tooth to replace the one Plaintiff knocked out. (*Id.* at ¶ 13.)

On April 4, 2017, Ms. Mayberry published a book that is at the heart of this lawsuit—"Before Empire: Raising Bryshere 'Yazz the Greatest' Gray" (the "Book"). (*Id.* at ¶¶ 7-8, Ex. A.) The Book focuses on the story of raising Ms. Mayberry and Plaintiff's son, Bryshere Gray, and includes a description of her story as a survivor of domestic violence by Plaintiff. **The Book also** focuses on her experiences raising Bryshere in light of her relationship with Plaintiff, Bryshere's mental health issues (ADHD), and the mental health history of Plaintiff's family, including Plaintiff's schizophrenia. (*Id.* at ¶ 10.)

Ms. Mayberry's and Plaintiff's son, Bryshere, is a public figure, and he has been since at least 2015, at which time he began being featured as a central character in every episode of the show "Empire" on Fox—which ran for six seasons and was regularly watched by millions of viewers. (*Id.* at ¶ 22.)

In and around the time Ms. Mayberry published the Book, she appeared for an interview for the television talk show "The Real" that aired in April of 2017—which is referenced in the Third Amended Complaint ("TAC"). (*Id.* at ¶ 10.) Plaintiff's scattered filings have also

referenced other media appearances by Plaintiff, and they appear to specifically reference the following appearances: (1) her March 2015 audience appearance on "The View"; (2) her Blaze 267 Radio appearance in 2016; (3) her January 2017 appearance on the Wendy Williams Show; (4) her appearances on Fox 29 News, which occurred from 2015 through November of 2017, although not during the month of June of 2017. (*See, e.g.*, Doc. no. 21-1 at pp. 2-3; Doc. no. 94; Doc. no. 95; *see also* SMF at ¶¶ 23-28.) Ms. Mayberry did not discuss Plaintiff in any of the above media appearances, nor did she display an image of him. (SMF at ¶¶ 23-29.)

At the time of the above media appearances through the present, Ms. Mayberry has been a resident of Pennsylvania who has no meaningful connection with the State of Georgia. (*Id.* at ¶¶ 33-38.) **And most importantly**, Ms. Mayberry has not directly sold the Book to anyone in Georgia. (*Id.* at ¶ 34.)

On June 14, 2018, Plaintiff filed this lawsuit asserting claims based on Ms. Mayberry's statements in the Book. (Doc. no. 1-1.) On January 28, 2019, Plaintiff filed his Third Amended Complaint that ostensibly added claims related to alleged (but unspecified) statements on "The Real," "The View," and other undisclosed outlets. (*See* Doc. no. 21-1 at p. 3; *see also* Doc. no. 1-1; Doc. no. 12.) The Third Amended Complaint asserts claims against Ms. Mayberry for defamation, slander, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NEID"), invasion of privacy, harassment, negligence, and punitive damages. (Doc. no. 21-1 at p 2.) Those claims lack merit.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party can show that a fact cannot be genuinely disputed by demonstrating that

"an adverse party cannot produce admissible evidence to support the fact." *Id.* at (c)(1)(B). If the non-movant "fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (internal citation omitted).

## ARGUMENT

### I. Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails Because Ms. Mayberry's Conduct Was Not Directed at Plaintiff

There is no dispute that Ms. Mayberry's statements at issue here were made to the general public rather than being directed to Plaintiff, (*see, e.g.*, Doc. no. 21-1 at pp. 2-3; Doc. no. 94; Doc. no. 95), thus Plaintiff's IIED claim fails as a matter of law. *See Pierce v. Warner Bros Ent., Inc.*, 237 F. Supp. 3d 1375, 1381 (M.D. Ga. 2017) ("Public broadcasts, however, are not directed at a particular individual and thus are not 'actionable as intentional infliction of emotional distress.'") (quoting *Lively v. McDaniel*, 240 Ga. App. 132, 134 (1999)). "The legal remedy where one is allegedly injured by words published to a third person is an action for defamation." *Tucker v. News Publ'g Co.*, 197 Ga. App. 85, 86 (1990).

### II. Plaintiff's Claims for Defamation Fail

Plaintiff's claims for libel and slander—i.e., defamation—fail on multiple fronts, including the statute of limitations, the absence of a defamatory statement, truth, Plaintiff's status as a defamation-proof plaintiff, and the lack of personal jurisdiction. Accordingly, the Court should grant summary judgment on the defamation claims in Ms. Mayberry's favor.

The elements of a defamation claim are as follows: (1) a false and defamatory statement about the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special damages or defamatory words "injurious on their face." *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 811 (2011).

### a. Plaintiff's Defamation Claims Are Barred by the One-Year Statute of Limitations

Defamation claims are subject to a one-year statute of limitations. *See* O.C.G.A. § 9-3-33 (providing that actions "for injuries to the reputation . . . shall be brought within one year after the right of action accrues"). Georgia has adopted the single publication rule, whereby the statute of limitations begins to run from the initial date of publication: e.g., for a book, the statute of limitations begins to run on the first day it was published, and the clock is not retriggered by subsequent sales of the same edition. *See Carroll City/Cty. Hosp. Auth. v. Cox Enterprises*, 243 Ga. 760, 760 (1979) (recognizing that Georgia adopted the "single publication rule . . . that the statute of limitations is to run from the date of initial publication").

Plaintiff has only identified seven publications by Ms. Mayberry, all of which occurred outside of the one-year statute of limitations applicable to this matter, which Plaintiff filed on June 14, 2018, as to the Book, and January 28, 2019, as to the media appearances: (1) her 2016 statements communicating the content of the Book; (2) the April 2017 publication of the Book; (3) her April 2017 appearance on "The Real"; (4) her January 2017 appearance on the Wendy Williams Show; (5) her appearance purported June 2017 appearance on Fox 29 News, which never happened;[1] (6) her Blaze 267 Radio appearance in 2016, and (7) her March 2015 audience appearance on "The View." (*See, e.g.*, Doc. 21-1 at 2-3; Doc. No. 94; Doc. No. 95; SMF at ¶¶ 8-9; 23-29). This alone warrants summary judgment on the defamation claims.

---

[1] Plaintiff has developed no actual evidence that Ms. Mayberry appeared on Fox 29 News in June of 2017, and Plaintiff did not in fact appear on the network in June of 2017. (*See, e.g.*, Doc no. 78-3; Doc. No. 95 at ¶ 2; SMF at ¶ 25.) Ms. Mayberry's appearance on Fox 29 discussing the Book actually occurred on a program called "The Q," which aired in February of 2017 (more than one year before the complaint was filed),and she did not even discuss Plaintiff. (*See* SMF at ¶ 26.)

### b. Several of Ms. Mayberry's Publications Cannot Possibly Be Defamatory of Plaintiff.

A written statement is defamatory when it "tend[s] to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1. A spoken publication is slanderous when it (1) imputes to the plaintiff a crime punishable by law; (2) charges the plaintiff with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; (3) makes charges against the plaintiff in reference to his trade, office, or profession, calculated to injure him therein; or (4) contains any disparaging words productive of special damage which flows naturally therefrom. O.C.G.A. § 51-5-4.

Here, the following publications by Ms. Mayberry could not possibly be defamatory as to Plaintiff, as she did not even discuss Plaintiff: (1) her March 2015 audience appearance on The View; (2) her Blaze 267 Radio appearance in 2016; (3) her appearances on Fox 29, which occurred from 2015 through November of 2017; (4) her January 2017 appearance on The Wendy Williams Show; and (5) her April 2017 appearance on The Real. (SMF at ¶¶ 23-29.)

### c. Ms. Mayberry's Statements About Plaintiff Are True

The Court should grant summary judgment on the defamation claims, as her allegations about Plaintiff are true: i.e., that he assaulted her (and the surrounding circumstances), that he caused her to go into early labor, and that he is schizophrenic. (*Id.* at ¶¶ 13-17.) Plaintiff, in fact, brutally beat her while she was pregnant with their son, causing injuries, including knocking out her front tooth (which is now capped), leaving her bloodied and swollen, and interfering with her ability to eat for weeks. (*Id.* at ¶ 13.) Plaintiff's attack upon her caused her to have contractions and led to her giving birth to their son prematurely. (*Id.* at ¶ 15.) And Plaintiff then again physically attacked her while their son was in the hospital—throwing her to the ground where he kicked and stomped her. (*Id.* at ¶ 16.)

6

### d. Plaintiff's Defamation Claims Fails Because He Is Defamation Proof.

It is beyond dispute that Plaintiff is defamation proof because of his public conviction for beating his pregnant wife, a second woman who was similarly physically abused by Plaintiff in the most horrific manner. That woman lost her baby; thus, Ms. Mayberry is entitled to summary judgment on his defamation claims. Georgia courts have recognized that a Plaintiff with a serious criminal record cannot maintain an action for defamation because "he could not suffer any loss of reputation by an even totally baseless claim against him." *Kennedy v. Se. Newspapers Corp.*, No. I99-2005G, 2000 WL 33174135, at *5 (Ga. State Ct. Sept. 12, 2000). "That which one does not have[, namely, a good reputation], one cannot lose or have damaged." *Id.* (internal quotation marks omitted).

Here, before Ms. Mayberry made her statements, Plaintiff had already publicly lost his reputation—particularly with regard to domestic violence against pregnant women. In 2015, Plaintiff was found guilty of one count of family violence aggravated assault, two counts of misdemeanor family violence battery (one count as a lesser-included crime to family violence aggravated assault), one count of false imprisonment, and two counts of cruelty to children in the third degree." *Gray*, 347 Ga. App. at 235; (SMF at ¶ 19). This conviction was the result of his Plaintiff brutal attacks on his then pregnant wife as stated above, resulting in the death of her seven-months old fetus. *Gray*, 347 Ga. App. at 235; (SMF at ¶ 20).

"Gray [himself] confessed that he had committed several of the acts for which he was later indicted, including punching his wife in the face and beating her with a belt." *Gray*, 347 Ga. App. at 236. Plaintiff then lost his appeal of his conviction. (SMF at ¶ 21.) Because Plaintiff had no good reputation to injure—given the public finding of guilt for heinous crimes—he is

defamation proof. Thus, the Court should grant summary judgement in favor of Ms. Mayberry on Plaintiff's defamation claims.

### e. The Court Does Not Have Personal Jurisdiction for Plaintiff's Defamation Claim

The Court does not have personal jurisdiction over Ms. Mayberry for Plaintiff's defamation claims because Georgia's longarm statute is limited for defamation claims. At all times relevant to this case—i.e., from 2015 to the present—Plaintiff has resided in Pennsylvania. (SMF at ¶ 33.) The longarm statute only provides for jurisdiction over a nonresident:

> if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (4) Owns, uses, or possesses any real property situated within this state . . . .

O.C.G.A. § 9-10-91.

As the Magistrate Court recognized, the second prong of Georgia's longarm statute specifically carves out defamation. (Doc. no. 105 at 5 (discussing O.C.G.A. § 9-10-91(2).) And the Plaintiff cannot show that the three other relevant prongs of the longarm statute have been met her, while Ms. Mayberry demonstrates they have not.

From 2015 to the present, Plaintiff has not transacted business within Georgia—regularly or otherwise—nor has she regularly solicited business in the state. (SMF at ¶¶ 34-37); *see* O.C.G.A. § 9-10-91(1), (3). Indeed, neither she nor the publisher themselves

sold the Book to a buyer in Georgia—whether directly to a reader or to a wholesaler. (SMF at ¶ 34; Doc. no. 81-3 ¶ 27.) And from 2015 to the present, Plaintiff has not engaged in any persistent course of conduct, derived substantial revenue from goods used or consumed or services rendered in Georgia; or owned, used, or possessed any real property situated within Georgia. (SMF at ¶¶ 37-38); *see* O.C.G.A. § 9-10-91, (3)-(4). Because there can be no dispute as to Ms. Mayberry's *de minimis* ties to the state of Georgia, she is entitled to summary judgment on Plaintiff's defamation claims for lack of personal jurisdiction.

### III. <u>Plaintiff's Claims for Negligence Fail</u>

Plaintiff asserts two claims for negligence—one simply couched as "negligence" and the other as "negligent infliction of emotional distress." (Doc. no. 21-1 at pp. 2-3.) The Court should grant summary judgment as to both for similar reasons.

#### a. Plaintiff's Claims for Negligence and NEID Are Subsumed by Defamation

A plaintiff cannot avoid the requirements of a defamation claim—including its statute of limitation—by clothing a claim for defamation as a claim for negligence. *See Lee v. Caterpillar Inc.*, No. 1:11-CV-2130-WSD, 2011 WL 13176333, at *3 (N.D. Ga. Dec. 2, 2011), *aff'd*, 496 F. App'x 914 (11th Cir. 2012). That is, to support an independent claim for negligence, a plaintiff must allege the breach of a duty beyond the duty to refrain from defaming him. *See id.* Here, because there is no evidence that Ms. Mayberry breached a duty that could support a negligence claim—beyond her alleged defamatory conduct—she is entitled to summary judgment on Plaintiff's negligence and NEID claims. (*See* Doc. no. 21-1 at 2-3.)

9

### b. Plaintiff's Claims for Negligence and NEID Are Barred by the One-Year Statute of Limitations

As discussed above, the statute of limitations for injuries to reputation is one year. O.C.G.A. § 9-3-33. This statute of limitations applies to negligence claims that are seeking damages that stem from reputational harm. *See, e.g.*, *Butler v. Gwinnett Cty., Georgia*, No. 1:15-CV-3289-LMM, 2016 WL 10649204, at *12 (N.D. Ga. June 3, 2016) (applying one-year statute of limitations to defamation claim clothed as simple negligence). Accordingly, Ms. Mayberry is entitled to summary judgment for the negligence claim and the NEID, to the extent they stem from purported reputational harm.

### c. Plaintiff's Claims for Negligence and NEID Are Barred by the Impact Rule

Georgia follows the impact rule, such that "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (2000). There "is not the necessity of an impact when the alleged conduct directed toward the plaintiff is malicious, willful, or wanton." *Id.*

Here, Plaintiff has not alleged that there was a physical injury, (Doc. no. 21-1), nor can he adduce evidence that Ms. Mayberry physically injured him or that she even directed any conduct toward him—as opposed to publications directed to the general public, (*id.*; SMF at ¶¶ 7-8; 23-29; 32). Accordingly, the Court should grant summary judgment against Plaintiff for his negligence claims based on emotional distress.

## IV. Plaintiff's Claim for Invasion of Privacy Fails

Plaintiff does not articulate which facet of the umbrella tort of invasion of privacy he is proceeding under. In an abundance of caution, Ms. Mayberry will show why she is entitled to summary judgment no matter the invasion of privacy claim—whether it is (1) intrusion upon a

plaintiff's seclusion or solitude, or into a plaintiff's private affairs; (2) public disclosure of embarrassing private facts; (3) false light; or (4) appropriation of a plaintiff's name or likeness. *Torrance v. Morris Pub. Grp. LLC*, 281 Ga. App. 563, 572 (2006) (listing four types of invasion of privacy claims).

### a. Plaintiff's Claim for Intrusion Upon Seclusion or Solitude Fails

The tort of intrusion upon seclusion or solitude requires either a physical intrusion into a plaintiff's seclusion, or a non-physical intrusion, such as eavesdropping or wiretapping. *Anderson v. Mergenhagen*, 283 Ga. App. 546, 550 (2007); *Summers v. Bailey*, 55 F.3d 1564, 1566 (11th Cir. 1995). Here, Plaintiff has not alleged any physical or non-physical intrusion by Ms. Mayberry, (TAC *passim*), (Doc. no. 21-1 *passim*); nor has Ms. Mayberry engaged in such activity, (SMF at ¶¶ 30-32). Accordingly, summary judgment in favor of Ms. Mayberry should be entered on this claim.

### b. Plaintiff's Claim for Public Disclosure of Private Facts Fails

Plaintiff's claim for public disclosure of private facts fails because this claim cannot be based on false facts and because Ms. Mayberry's statements about Plaintiff were in the public interest.

First, a claim for public disclosure of private facts must be based on disclosure of true facts, as a claim based on false facts is either for false light or defamation. *Cf. Torrance*, 281 Ga. App. at 572 (setting forth the four invasion of privacy torts and categorizing a claim for a false statement as one for false light); *see Henson v. Henson*, 2005-Ohio-6321, ¶ 15 (quoting with approval party's argument that "this is more an issue of defamation than an invasion of privacy. To publish a statement that is a complete misrepresentation of facts is not an invasion of privacy[.]").

Here, Plaintiff's TAC alleges that Ms. Mayberry's statements about him were "false" and "defamatory," which includes the statements that he violently attacked her, that he caused her to go into premature labor, and that he is schizophrenic. (Doc. no. 21-1 at p. 2.) Plaintiff has not articulated any statements to support a claim for public disclosure of public facts beyond those that he alleges are defamatory. (*See, e.g.*, *id.*; Doc. No. 109 at p. 3 (arguing that schizophrenia statement—which TAC states is false—was a public disclosure of private facts).) Thus, Plaintiff is relegated to claims for false light or defamation.

Second, a claim for public disclosure of private facts cannot be asserted for statements that are in the public interest. As this Court has already held, "accusations of criminal acts fall squarely within the sphere of public interest for which there is absolute protection from liability on a claim for public disclosure of private facts." *Gray v. Mayberry*, No. CV 318-045, 2021 WL 1085307, at *4 (S.D. Ga. Feb. 22, 2021), *report and recommendation adopted*, No. CV 318-045, 2021 WL 1083181 (S.D. Ga. Mar. 18, 2021) (citing *Cottrell v. Smith*, 299 Ga. 517, 532 (2016)); *see also Macon Tel. Pub. Co. v. Tatum*, 263 Ga. 678, 679 (1993) (holding same).

Moreover, "[t]here are times . . . when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion" *Ramsey v. Georgia Gazette Pub. Co.*, 164 Ga. App. 693, 695 (1982) (internal citation and quotation marks omitted). Thus, a plaintiff can "unwillingly . . . become an actor in a public drama, whereby "dissemination of information pertaining to this drama is no violation of the plaintiff's right of privacy." *Id.*; *see also Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980) (discussing U.S. constitutional privilege from liability for public disclosure of private facts, which "extends to information concerning interesting phases of human activity and

embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period.")

Plaintiff's claim related to his physical attacks upon Ms. Mayberry relate to the commission of a crime, which is a matter of public interest that cannot be the subject of a claim for the public disclosure of private facts. And Ms. Mayberry's statement about the mental health history of Plaintiff's family—including Plaintiff's mother's belief that he is schizophrenic—is a matter of public interest that cannot support a claim for public disclosure of private facts. Plaintiff and Ms. Mayberry's son is a public figure who is at the center of the Book's story about how to raise a child with mental health issues (ADHD) and survive an abusive relationship—a matter which itself is of public interest. (SMF at ¶¶ 10, 22, Ex. A ) Ms. Mayberry's statement about Plaintiff's schizophrenia were squarely in the scope of telling the story of their son's diagnosis, the paternal history of mental health, and Plaintiff's reaction to learning that his son had a mental health condition. (*Id.*) Regardless of whether Plaintiff was a willing participant in a public drama, his son became a public figure whose story about his family's struggles with domestic violence and mental health are a matter of public interest, that, when told, is a story that helps others overcome their own struggles.

Accordingly, the Court should grant summary judgment to Ms. Mayberry on Plaintiff's claim for public disclosure of private facts.

### c. Plaintiff's False Light Claim Fails

Plaintiff's false light claim is barred by the statute of limitations and are subsumed by defamation. First, the "one-year limitation period [from O.C.G.A. § 9–3–33] applies to claims of libel and **'false light' invasion of privacy**." *Torrance*, 281 Ga. App. at 568 (emphasis added). As shown above, Ms. Mayberry's publications were made more than one year before Plaintiff

13

filed his initial Complaint and/or the TAC. On this basis alone, summary judgment should be granted against Plaintiff on his false light claims.

Second, Plaintiff cannot plead around defamation and assert, instead, a false light invasion of privacy claim for statements that are allegedly defamatory. "In order to survive a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy." *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 557 (2005) (affirming summary judgment to defendant); *Smith v. Stewart*, 291 Ga. App. 86, 100-01 (2008) ("If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy."); *Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1292-93 (N.D. Ga. 2018) (same principal of law and granting summary judgment to defendant on false light claim). Here, Plaintiff is explicitly pursuing Ms. Mayberry's statements about him as claims for defamation, thus his false light claim fails. (*See, e.g.*, Doc. no. 21-1 (describing as defamatory accusations of violent attacks, premature births, and schizophrenia).)

Accordingly, the Court should grant summary judgment to Ms. Mayberry on Plaintiff's false light claim.

### d. Plaintiff's Claim for Appropriation of Name or Likeness Fails

Plaintiff's claim for appropriation of name or likeness fails, as he cannot show that Ms. Mayberry used either his name or likeness, and the statements were a matter of public interest.

First, the Supreme Court of Georgia holds that an appropriation of name or likeness claim "consists of the following elements: '[1] the appropriation of another's name and likeness, whether such likeness be a photograph or [other reproduction of the person's likeness], [2] without consent[, and] [3] for the financial gain of the appropriator.'" *Bullard v. MRA Holding,*

*LLC*, 292 Ga. 748, 752 (2013) (quoting *Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Products, Inc.*, 250 Ga. 135, 143 (1982)). That is, a plaintiff must show both that his name was used **and** that his he was visually depicted. *Id.*; *see also Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (1905) (describing "likeness" as visual depiction). Here, Ms. Mayberry neither used Plaintiff's name nor did she visually depict him. (SMF at ¶¶ 11-12, 23-29).

Second, "[t]he Supreme Court of Georgia has held that 'where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy.'" *Toffoloni v. LFP Publ'g Grp., LLC,* 572 F.3d 1201, 1208 (11th Cir. 2009) (quoting *Waters v. Fleetwood,* 212 Ga. 161, 167 (1956)). As discussed above, Ms. Mayberry's statements about domestic violence and mental health are matters of public interest, and therefore cannot form the basis of a claim appropriation of name or likeness.

### V. Plaintiff's Claim for Harassment Fails

While Plaintiff's TAC alleges a claim for harassment, (Doc. no. 21-1 at p. 1), he neither alleges facts that could support a claim for harassment, (*id.*), nor does it appear that he is continuing to pursue a claim for harassment, (*see, e.g.*, Doc. no. 109 at p. 1.) This stands to reason, as there is no tort in Georgia for simple "harassment."

### VI. Plaintiff's Claim for Punitive Damages Fails

Because Plaintiff's claim for punitive damages and costs cannot survive alone, the Court should grant summary judgment in Ms. Mayberry's favor. *See Boeing Co. v. Blane Int'l Grp.*, 276 Ga. App. 672, 676 (2005) ("The derivative claim [for punitive damages] cannot survive the absence of compensatory damages on the underlying claim."); *Sandy Springs Toyota v. Classic*

15

*Cadillac Atlanta Corp.*, 269 Ga. App. 470, 472 (2004) (judgment in favor of defendant on plaintiff's claims for attorney's fees and costs because plaintiff's underlying claims failed).

## **CONCLUSION**

Ms. Mayberry respectfully requests that the Court grant summary judgment in her favor to put an end to Plaintiff's meritless claims against her.

Respectfully submitted, this 17th day of April, 2021.

                                                            J. WALKER & ASSOCIATES, LLC

                                                            By: */s/James L. Walker, Jr.*
                                                            James L. Walker, Jr.
                                                           Georgia Bar No. 260643

3421 Main Street | Suite A
Atlanta, GA 30337
Phone: (770) 847-7363
jjwalker@walkerandassoc.com

*Counsel for Defendant Andria Mayberry*

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I served the following party to this action with a copy of the within and foregoing by depositing the same in the U.S. mail in a properly addressed envelope with adequate first-class postage to the following:

> Ronald B. Gray
> GDC 1001702913
> Wheeler Correctional Facility
> PO Box 466
> Alamo, Georgia 30411

And that on this day I electronically filed the within and foregoing with the Clerk of the Court using the ECF system which will send notification of filing to the following counsel of record:

> John B. Watson
> P.O. Box 3248
> Augusta, GA 30914
> jpbatson@aol.com
>
> *Attorney for Defendant TMG Firm, LLC*

This 17th day of April, 2021.

By: */s/James L. Walker, Jr.*
James L. Walker, Jr.
